856 So.2d 1173 (2003)
In re Floyd M. GIBSON.
No. 2003-B-0582.
Supreme Court of Louisiana.
September 26, 2003.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from nineteen counts of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Floyd M. Gibson. Respondent was disbarred by this court in 2000. In re: Gibson, 00-2658 (La.11/27/00), 773 So.2d 691 ("Gibson I"). For the reasons assigned, we now permanently disbar respondent.

FORMAL CHARGES

Count IThe Weiner Matter
On June 29, 1999, Jessica Weiner retained respondent to represent her in a criminal matter. On July 1, 1999, Ms. Weiner paid respondent $4,000. On July 2, 1999, Ms. Weiner decided to retain other counsel, who informed respondent of their representation the same day. Though he had performed no services on his client's behalf, respondent failed to promptly refund the legal fee he was paid.
*1174 On July 15, 1999, Ms. Weiner filed a complaint against respondent with the ODC. On August 2, 1999, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to timely reply to the complaint, necessitating the issuance of a subpoena to compel his response.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.16(d) (termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation).

Count IIThe Hudson Matter
On January 23, 1996, Thebia Hudson paid respondent $300 to handle a criminal matter on her behalf. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In December 1999, Ms. Hudson filed a complaint against respondent with the ODC. On January 12, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 1.16(d), 8.1(c), 8.4(a), 8.4(c), and 8.4(g).

Count IIIThe Gaudet/Chenier Matter
Keith Gaudet and Keith Chenier were arrested in New Orleans on December 30, 1999. On January 2, 2000, respondent visited the men in jail and solicited their representation. Respondent also sought and obtained permission from the men to withdraw $15,000 in cash from their bank safety deposit box, and he did so on January 4, 2000.[1] On January 12, 2000, respondent visited Mr. Gaudet in jail, at which time he terminated respondent's representation. Mr. Gaudet also requested that respondent return the $15,000 he had received a week earlier. Respondent returned $10,000 to Mr. Gaudet on February 1, 2000, but though he had done little work in the criminal matter,[2] claimed the remaining $5,000 was his legal fee. Respondent has failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
On January 18, 2000, Mr. Gaudet and Mr. Chenier filed a complaint against respondent with the ODC. On February 3, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him *1175 to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 1.16(d), 7.2 (direct contact with prospective clients), 8.1(c), 8.4(a), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c), 8.4(d), and 8.4(g).

Count IVThe Cefalu-Pfaff Matter
In February 1999, Christine Cefalu-Pfaff paid respondent $400 to represent her husband, Walter Pfaff, in a criminal matter. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In January 2000, Ms. Cefalu-Pfaff filed a complaint against respondent with the ODC. On February 9, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 1.16(d), 8.1(c), 8.4(a), 8.4(d), and 8.4(g).

Count VThe Battle Matter
Larry Battle filed a complaint against respondent with the ODC in February 2000.[3] On March 14, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 8.1(c), 8.4(a), and 8.4(g).

Count VIThe Ussin Matter
In February 2000, Karen Ussin paid respondent $200 to represent her son, Allen Ussin, in a criminal matter. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. Respondent also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In March 2000, Ms. Ussin filed a complaint against respondent with the ODC. On April 10, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d), 8.1(c), 8.4(a), 8.4(d), and 8.4(g).

Count VIIThe Francis Matter
In August 1996, Lona Francis retained respondent to obtain a divorce on her behalf. Ms. Francis paid respondent $50 on August 3, 1996 and $100 on December 31, 1997. However, respondent failed to complete the representation. He also failed to *1176 account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In April 2000, Ms. Ussin filed a complaint against respondent with the ODC. On April 25, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count VIIIThe Minor Matter
On January 31, 2000, Willie May Minor paid respondent $7,166 to represent her son, Alvin Green, in a criminal matter.[4] Respondent failed to complete the representation, failed to account for any earned portion of the legal fee, and failed to refund the unearned portion of the fee.
In April 2000, Ms. Minor filed a complaint against respondent with the ODC. On April 25, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count IXThe Smith Matter
In April 1996, Patricia Smith retained respondent to obtain a divorce on her behalf. Ms. Smith paid respondent $290 on April 4, 1996 and an additional $200 on October 23, 1997. However, respondent failed to complete the representation. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.[5]
In June 2000, Ms. Smith filed a complaint against respondent with the ODC. On July 13, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count XThe Harrell Matter
Darryl Harrell filed a complaint against respondent with the ODC in July 2000.[6] On August 1, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
*1177 The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 8.1(c), 8.4(a), and 8.4(g).

Count XIThe Webber Matter
In December 1997, Richard Webber retained respondent to represent him in a criminal matter. Respondent represented Mr. Webber at trial and filed an appeal on his behalf after he was found guilty. The court of appeal affirmed Mr. Webber's conviction and sentence. State v. Webber, 99-23 (La.App. 5th Cir.7/27/99), 742 So.2d 952. However, Mr. Webber was unaware that respondent had filed the appeal in the first instance, and respondent never informed his client of the court of appeal's ruling. Furthermore, respondent failed to turn over to Mr. Webber the trial and sentencing transcripts he used to prepare the appeal, thereby hindering Mr. Webber's efforts in filing an application for post-conviction relief.[7]
In July 2000, Mr. Webber filed a complaint against respondent with the ODC. On August 18, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.4, 8.1(c), 8.4(a), 8.4(d), and 8.4(g).

Count XIIThe Armbruster/Pucel Matter
In March 2000, respondent was paid $1,200 to represent Louise Armbruster and Larry Pucel in a criminal matter. Respondent failed to complete the representation and failed to communicate with his clients concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.[8]
In July 2000, Ms. Armbruster filed a complaint against respondent with the ODC. On August 29, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 8.1(c), 8.4(a), and 8.4(g).

Count XIIIThe Price Matter
On September 10, 2000, Julie Ann Price paid respondent $400 to represent Jamaal Morris in a criminal matter. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.[9]
On September 22, 2000, Ms. Price filed a complaint against respondent with the *1178 ODC. On October 6, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count XIVThe Davis Matter
In October 2000, Ruth Davis paid respondent $250 to represent her son, Tyrone Rogers, in a criminal matter. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.[10]
In November 2000, Ms. Davis filed a complaint against respondent with the ODC. On November 29, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count XVThe Hughes Matter
On September 1, 2000, Freddie L. Hughes, Jr. paid respondent $500 to represent his son, Terrance Brown, in a criminal matter. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.[11]
In November 2000, Mr. Hughes filed a complaint against respondent with the ODC. On December 6, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count XVIThe Swinney Matter
On November 19, 2000, Curtis Swinney paid respondent $500 to represent Stephanie Matthews in a criminal matter. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In December 2000, Mr. Swinney filed a complaint against respondent with the ODC. On January 2, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer *1179 the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count XVIIThe Rogers Matter
On October 16, 2000, Vernice Rogers paid respondent $250.52 to represent him in a criminal matter.[12] Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In December 2000, Mr. Rogers filed a complaint against respondent with the ODC. On January 9, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count XVIIIThe Howard Matter
Respondent's disbarment in Gibson I became final on December 11, 2000. Nevertheless, on January 22, 2001, respondent accepted $450 from Dianne Howard to represent her son, Dennis Darby, in a criminal matter. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In January 2001, Ms. Howard filed a complaint against respondent with the ODC. On February 5, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), 5.5 (engaging in the unauthorized practice of law), 8.1(c), 8.4(a), and 8.4(g).

Count XIXThe Elabed Matter
On December 11, 2000, Nael Elabed paid respondent $1,000 to represent his brother, Thair Elabed, in a criminal matter. Respondent failed to complete the representation and failed to communicate with his client concerning the matter. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In March 2001, Mr. Elabed filed a complaint against respondent with the ODC. On March 29, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent's conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f), 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

*1180 DISCIPLINARY PROCEEDINGS
On October 22, 2001, the ODC filed nineteen counts of formal charges against respondent. Respondent answered the formal charges and generally denied any misconduct. Accordingly, the matter proceeded to a formal hearing on the merits. At the hearing, the ODC called thirteen witnesses to testify in person and submitted the deposition testimony of three other witnesses. The ODC also introduced some 138 exhibits. However, despite notice, respondent did not appear at the hearing.

Hearing Committee Recommendation
After reviewing the record, the hearing committee determined the ODC proved by clear and convincing evidence a violation of each professional rule cited in the formal charges (though not in every instance where the rule was cited). The committee found sufficient evidence to support most of the allegations subject of each count, with the exception of Count XVII (the Rogers matter), where it found no evidence to support any of the rule violations alleged because Mr. Rogers did not testify. Specifically, the committee concluded respondent assumed the representation of numerous clients, was paid a fee, failed to communicate with his clients, failed to do the work for which he was paid, failed to account for earned fees and return unearned fees, and failed to cooperate with the ODC in its investigation of the complaints filed against him. The committee also pointed out that respondent improperly solicited the representation of one of his clients, and in connection with Count XVIII (the Howard matter), engaged in the practice of law after he was disbarred by this court. The committee concluded the baseline sanction for respondent's conduct is disbarment.
In aggravation, the committee recognized respondent's prior disciplinary record,[13] dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and substantial experience in the practice of law (admitted 1987). The committee found no mitigating factors are present.[14]
Given the extensive pattern of misconduct, in particular respondent's engaging in the unauthorized practice of law after being disbarred, the committee recommended that he be permanently disbarred.
Neither respondent nor the ODC objected to the hearing committee's recommendation.

Disciplinary Board Recommendation
The disciplinary board generally concurred in the hearing committee's factual findings and its application of the Rules of Professional Conduct, though it rejected the committee's findings with respect to Count XVII, the Rogers matter.[15] The *1181 board found respondent violated duties owed to his clients, the public, and as a professional. Respondent's conduct is both knowing and intentional in failing to provide legal services for which he had been paid. He failed to protect clients' property and account for and refund unearned fees. Respondent also continued to engage in the practice of law after being disbarred in November 2000. Clients have been harmed by respondent's failure to timely handle their legal matters, and multiple clients are owed refunds of legal fees.
The board concurred in the aggravating factors cited by the hearing committee, and found the record also supports a finding that respondent is indifferent to making restitution. The board found no mitigating factors are present. Considering the weight of the aggravating factors present, and the absence of mitigating factors, the board recommended respondent be permanently disbarred. The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court's judgment until paid.
Neither respondent nor the ODC objected to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our review, we conclude the record supports the committee's findings that respondent engaged in multiple instances of serious misconduct. Specifically, he neglected his clients' legal matters, failed to communicate with his clients, failed to account for and refund unearned fees, failed to cooperate with the ODC in its investigation, engaged in the unauthorized practice of law after being disbarred by this court, and improperly solicited the representation of a client in a criminal matter.
Having found evidence of professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent's misconduct represents a serious breach of his professional duties. *1182 Numerous aggravating factors are present, including respondent's prior disciplinary record, dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and substantial experience in the practice of law. We are unable to discern any mitigating factors from the record.
The appropriate sanction for this misconduct is clearly disbarment. Thus, the sole remaining question is whether respondent's conduct is so egregious that he should be permanently prohibited from seeking readmission to the practice of law.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment.
For purposes of the instant case, Guidelines 8 and 9 are relevant. Those guidelines provide:
GUIDELINE 8. Following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred.
GUIDELINE 9. Instances of serious attorney misconduct or conviction of a serious crime, when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime. Serious crime is defined in Rule XIX, Section 19. Serious attorney misconduct is defined for purposes of these guidelines as any misconduct which results in a suspension of more than one year.
Guideline 8 is clearly applicable to this case, as the undisputed evidence shows respondent continued to represent clients after his license to practice law was revoked by this court in Gibson I. Likewise, Guideline 9 is implicated, as the instant misconduct, which is unquestionably serious attorney misconduct, was preceded by respondent's disbarment for prior instances of serious attorney misconduct.
We do not lightly impose the sanction of permanent disbarment. In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Respondent's actions convincingly demonstrate he does not possess the requisite moral fitness to practice law in this state. He must be permanently disbarred.
Accordingly, we will accept the disciplinary board's recommendation and impose permanent disbarment.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Floyd M. Gibson be permanently disbarred. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to furnish complete accountings and full restitution of all unearned legal fees to his clients subject of the formal charges. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest *1183 to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] It is unclear whether this sum represented bond money or respondent's legal fee.
[2] The records of the Orleans Parish Criminal District Court indicate that respondent filed a motion to reduce bond on behalf of Mr. Gaudet and Mr. Chenier; a motion to be recognized as attorney of record; and a motion for preliminary examination.
[3] The complaint arose from respondent's representation of Mr. Battle in a criminal case. The ODC did not charge respondent with any substantive misconduct in connection with this complaint.
[4] This sum represented both bond money and respondent's legal fee.
[5] In June 2001, respondent sent the ODC a money order in the amount of $300, which he requested be forwarded to Ms. Smith.
[6] The complaint arose from respondent's representation of Mr. Harrell in a criminal case. The ODC did not charge respondent with any substantive misconduct in connection with this complaint.
[7] In August 2000, Mr. Webber filed a motion requesting that the trial court provide him a copy of the trial and sentencing transcripts. The trial court denied the motion because the transcripts were provided to respondent in conjunction with the appeal.
[8] In June 2001, respondent sent the ODC a money order in the amount of $300, which he requested be forwarded to Ms. Armbruster.
[9] In June 2001, respondent sent the ODC a money order in the amount of $300, which he requested be forwarded to Ms. Price.
[10] In June 2001, Ms. Davis received a $250 refund directly from respondent.
[11] In June 2001, respondent sent the ODC two money orders totaling $400, which he requested be forwarded to Mr. Hughes.
[12] It is unclear whether this sum represented bond money or respondent's legal fee.
[13] In addition to the 2000 disbarment in Gibson I, respondent was twice admonished by the disciplinary board in 1999, once for engaging in the unauthorized practice of law and once for failing to cooperate with the ODC in its investigation. Respondent has also been declared ineligible to practice law on three occasions for failing to comply with his professional obligations.
[14] The committee acknowledged that respondent made restitution to some of his victims, but because "such restitution was not made until well after formal ethical complaints were filed and in many instances full restitution was not made," the committee declined to consider this in mitigation.
[15] The committee had found the ODC did not meet its burden of proof because the complainant did not testify at the hearing. However, the board pointed out that

The disciplinary system has, as a matter of course, accepted unsworn complaints as sufficient evidence when a respondent does not counter with sworn testimony or evidence. In the Rogers matter, the record is bare of evidence that Respondent refunded the client any money.... The Board finds the Committee's finding that Count 17 had not been proven is manifestly erroneous.